

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-16-00448-CV

IN THE INTEREST OF E.D., A
CHILD

----------

FROM THE 90TH DISTRICT COURT OF YOUNG COUNTY
TRIAL COURT NO. 32309

----------

## OPINION[1]

----------

Appellant Mother and Appellee Father have a child, E.D.[2]  In August 2014,

finding that it was not in E.D.'s best interest to appoint Mother and Father as joint

managing conservators, the trial court entered an order that named Mother as

---

[1]The troubling nature of the circumstances presented here—primarily, the appointment of a parent with a history of family violence as sole managing conservator by default, coupled with the numerous errors and irregularities present in the record and the failure to raise these errors on appeal or pursue a restricted appeal—prompted this court to decide this case en banc.  Tex. R. App. P. 41.1(a).

[2]To protect E.D.'s anonymity, we use an alias.  *See* Tex. R. App. P. 9.8, 9.9(a)(3).

the managing conservator with the right to designate E.D.'s primary residence, and ordered Father to pay child support. *See* Tex. Fam. Code Ann. § 153.132 (West 2014). The trial court also found that Father had a history or pattern of family violence and that, as a result, awarding him access to E.D. would endanger E.D.'s physical health or emotional welfare. *See id.* § 153.004(d) (West Supp. 2017).

Less than two years later, the provisions for conservatorship and visitation took a 180-degree turn. The trial court not only appointed Father as sole managing conservator but also restricted Mother's access to E.D. to six supervised hours of visitation each month. Though the trial court record before us is replete with errors, we are nevertheless hamstrung by applicable legal rules and principles to dismiss this appeal.

**Background**

On November 17, 2015, Father petitioned to modify the August 2014 order and sought appointment as a joint managing conservator and the imposition of a standard possession order. *See id.* § 156.101 (West 2014). On February 29, 2016, Father filed a "Motion for Substituted Service" alleging that his attempts to personally serve Mother at her last known address had been unsuccessful and requesting the trial court to permit alternate service under rule 106(b) by delivering the citation and petition to the maternal grandfather. *See* Tex. R. Civ. P. 106(b) (authorizing the trial court to allow alternate means of service). According to his attached affidavit, process server Matt Pruitt averred that he had

made three unsuccessful attempts to personally serve Mother but had also spoken to the maternal grandfather, who had assured Pruitt that if he was served with the citation, he would deliver it to Mother. Although the motion did not comply with the requisites of rule 106(b)—by failing to state the location of Mother's "usual place of business or usual place of abode or other place where [she could] probably be found"—the trial court nonetheless signed an "Order for Substituted Service" granting the motion and ordering the citation to be served by delivering it to the maternal grandfather.

Furthermore, the trial court's signature on the order granting substituted service is curiously dated February 23, 2016, even though the motion for substituted service was not filed until almost a week later, on February 29. And, although the order is dated February 23, it bears a filemark of February 29 and a time stamp of 9:35 a.m., exactly one minute after the motion's time stamp of 9:34 a.m.

On April 29, 2016, the trial court entered an order finding that Mother, "although duly and properly cited, did not appear and wholly made default" and granted the modification sought by Father. The trial court's order gave Father the relief he had pleaded for—it appointed Mother and Father joint managing conservators, awarded Father the exclusive right to designate E.D.'s primary residence, imposed a standard possession order, and ordered Mother to pay child support. *See* Tex. Fam. Code Ann. §§ 153.134, 153.312 (West 2014).

3

Then, on June 6, 2016, the trial court entered a judgment nunc pro tunc amending the prior judgment by appointing Father as the sole managing conservator and Mother as the sole possessory conservator. *Id.* §§ 153.132, 153.192 (West 2014) (addressing rights and responsibilities of a sole managing conservator and a possessory conservator, respectively). The trial court's nunc pro tunc judgment was problematic in two ways. First, in contradiction to Tex. R. Civ. P. 316, which allows only the correction of *clerical* mistakes in the judgment, it corrected a substantive (purported) "mistake" in the judgment, not a clerical one.[3] Second, it granted more relief than Father's petition requested. *See Simon v. BancTexas Quorum, N.A.*, 754 S.W.2d 283, 286 (Tex. App.—Dallas 1988, writ denied) (citing *Mullen v. Roberts*, 423 S.W.2d 576, 579 (Tex. 1968), for the proposition that "a default judgment must accord with the pleadings"). Unfortunately, while both of these errors arguably constituted error on the face of the record, Mother did not pursue the remedy of restricted appeal. *See* Tex. R. App. P. 26.1(c), 30.

Granting even further relief beyond Father's pleadings, the nunc pro tunc order also restricted Mother's access to E.D. to six supervised hours on the first

---

[3]The trial court purportedly signed the nunc pro tunc judgment because the April 29 order did not reflect the trial court's ruling as it was reflected on the docket sheet, which included a notation dated April 29, 2016, stating in part, "Modification—Pet Appt SMC-M SPC—F Primary Vis Mod SPO-Supervise." But this docket-sheet notation also purported to grant more relief than Father's pleading requested.

4

Saturday of each month. And, the nunc pro tunc judgment also reiterated that Mother had defaulted after being properly cited to appear.

On August 11, 2016, Mother filed a motion to set aside the default judgment and for a new trial. In it, Mother asserted that she was never properly served, that the Pruitt affidavit did not comply with statutory requirements, and that she did not learn about the case until the local sheriff "showed up at [her] house on June 18, 2016, to remove [E.D.] from [her]."[4]

In Father's response he argued that Mother's motion was untimely because it was filed more than 30 days after the nunc pro tunc judgment was signed. *See* Tex. R. Civ. P. 329b(a). Mother argued that her motion was timely because it was filed within two years of the nunc pro tunc judgment. *See* Tex. R. Civ. P. 329. After conducting a hearing on the matter, the trial court denied Mother's motion by letter ruling dated October 18, 2016, in which the trial court found that her motion was not timely filed. On appeal Mother challenges the trial court's order signed three days later that dismissed her motion for new trial as untimely.

## Discussion

As a general rule, the deadline for a party to file a motion for new trial is 30 days after the date the judgment is signed. Tex. R. Civ. P. 329b(a). This 30-day

---

[4]Because Mother admitted that she had received actual notice of the judgment within 12 days after the nunc pro tunc judgment she complains of was signed, it appears that she could not have invoked the 20–90 day rule to extend the time for filing her notice of appeal. Tex. R. Civ. P. 306a(4).

5

deadline is modified in certain situations, one of which is when service has been authorized through citation by publication.  Tex. R. Civ. P. 109, 329.

All lawsuits must be properly served upon the defendant.  *See* Tex. R. Civ. P. 99.  Most often, service is effectuated through the personal delivery of a clerk-issued citation and a copy of the petition by a sheriff, constable, process server, or individual who is not a party to the suit.  Tex. R. Civ. P. 103, 106(a).  But sometimes, as appears to have been the case here, attempts at personal service are unsuccessful, whether because the defendant has purposely avoided service or because the defendant cannot be located.  In those situations, the rules of civil procedure provide for alternative means of service, three of which are at issue here: rules 106, 109, and 109a.

Rule 106(b) provides that the party seeking service may submit a motion to the court supported by an affidavit that states (1) the location of the defendant's usual place of business or abode or another place where the defendant can probably be found and (2) facts showing that either personal service or service through certified mail was attempted but unsuccessful.  Tex. R. Civ. P. 106(b).  Upon receipt of such a motion and affidavit,

> the court may authorize service (1) by leaving a true copy of the citation, with a copy of the petition attached, with anyone over sixteen years of age at the location specified in such affidavit, or (2) in any other manner that the affidavit or other evidence before the court shows will be reasonably effective to give the defendant notice of the suit.

Tex. R. Civ. P. 106(b).

6

Service by publication is another alternative. Tex. R. Civ. P. 109. Generally, service by publication is conducted through the placement of a small notice published in the classified section of a local newspaper. *In re E.R.*, 385 S.W.3d 552, 558 (Tex. 2012). But serving citation by publication is "a last resort," restricted to situations in which a defendant's identity or location is unknown. *Id.* at 560–61 ("[W]hen a defendant's identity is known, service by publication is generally inadequate.").

In order to obtain citation by publication, a party, his agent, or his attorney must swear under oath that (1) the defendant's residence is unknown to the plaintiff or his attorney, (2) the defendant is a transient person and has not been located, or (3) the defendant is absent from or a nonresident of Texas and citation has been unsuccessfully attempted through personal service.[5] Tex. R. Civ. P. 109. Upon presentation of such an oath, the clerk—not the trial court—is required to authorize citation for service by publication. *Id.* If a defendant is served by publication, only later—prior to granting a default judgment for the plaintiff—will the trial court consider the adequacy of service by publication by reviewing the sufficiency of the diligence exercised in attempting to ascertain the residence or whereabouts of the defendant. *Id.*

Even in circumstances where citation by publication is warranted, a party may nevertheless elect another form of substituted service. *See* Tex. R. Civ. P.

---

[5]*See* Tex. R. Civ. P. 108, 108a (providing means of service of process in other states and foreign countries).

109a. Pursuant to rule 109a, "[w]henever citation by publication is authorized, the court may, on motion, prescribe a different method of substituted service, if the court finds, and so recites in its order, that the method so prescribed would be as likely as publication to give the defendant actual notice." *Id.* A 109a order authorizing a method of substituted service other than publication could authorize service by the very same method as a 106 order authorizing substituted service. *See Elam v. Armstrong*, No. 03-07-00565-CV, 2008 WL 3539968, at *2 (Tex. App.—Austin 2008, no pet.) (mem. op.) (noting that plaintiff received permission for 109a substituted service to be effected by leaving a copy of the citation and petition with anyone 16 years of age or older at defendant's former residence); *Isaac v. Westheimer Colony Ass'n, Inc.*, 933 S.W.2d 588, 590 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (noting use of 109a substituted service of citation and petition on defendant's father). But the question of whether substituted service was ordered under rule 106(b) or rule 109a is generally of no practical concern, as long as service was accomplished as ordered.

But here, whether substituted service was ordered under rule 106 or 109a is a critical question. Jurisdiction turns on the answer, because when substituted service is ordered under rule 109a, the deadline for filing a motion for new trial is extended from 30 days to two years. Tex. R. Civ. P. 109a (providing that rule 329 shall apply as if citation had been served by publication), 329 (providing that the trial court may grant a new trial upon petition showing good cause filed within two years after the date the judgment was signed). And here, Mother's motion to

set aside the default judgment and for a new trial was filed 66 days after the judgment nunc pro tunc was signed. Thus, it was timely—subject to a two-year, rather than 30-day, deadline—only if the trial court ordered substituted service under rule 109a. To determine which rule the trial court invoked here, we must look at the motion requesting substituted service and the order granting it.

In urging us to hold that service was ordered under rule 109a, Mother argues that because Father's motion did not comply with rule 106(b), as discussed above, substituted service could not have been properly ordered under that rule. Although we agree that substituted service was not *properly* issued under rule 106(b), for purposes of our analysis that fact is irrelevant. Any complaint as to defective service under rule 106(b) was subject to the 30-day deadline for filing a motion for new trial, a deadline that Mother did not meet.[6] Because she failed to lodge a timely challenge to any defects in service under rule 106, we focus instead on whether the substituted service was ordered under rule 109a because only if substituted service was ordered by rule 109a would Mother's motion for new trial have been timely filed, preserving her right to appeal here.

---

[6]Two additional options may have been available to Mother: (1) pursuing a restricted appeal within six months of the judgment, or (2) filing an equitable bill of review within four years of the judgment. *See* Tex. R. Civ. P. 329b, Tex. R. App. P. 26.1(c), 30; *Alaimo v. U.S. Bank Tr. Nat'l Assn.*, No. 02-16-00123, 2017 WL 3633297, *1 (Tex. App.—Fort Worth Aug. 24, 2017, no pet.) ("The bill of review is the chosen method when the default judgment under attack is no longer subject to a motion for new trial or [restricted appeal].").

9

Substituted service under rule 109a cannot be ordered unless citation by publication was authorized under rule 109. Tex. R. Civ. P. 109a (providing that "[w]henever citation by publication is authorized, the court may, on motion prescribe a different method of substituted service" and when "the defendant has not appeared, the . . . [two-year deadline] shall apply"). Thus, we face two questions: whether service by publication was authorized under rule 109 and, if so, whether the trial court's order authorized substituted service under 109a. The trial court had jurisdiction to consider Mother's motion for new trial only if the answer to both questions is "yes." But based on the record here—especially considering the language of the motion and the order itself—we must hold that the answer to both questions is "no."

As to the first question, to trigger the two-year deadline, service by publication must be "authorized." *Id.* Rule 109 sets forth the requisites for authorization of service of citation by publication, including that the party, his attorney, or his agent must swear under oath, among other things, that

- the defendant's residence is unknown to the affiant, or

- the defendant is a transient person, or

- the defendant is a nonresident.

Tex. R. Civ. P. 109. Father's motion for substituted service did not comply with the requisites of this rule. It was not verified, nor did Father or his attorney sign an affidavit in support of the motion. Assuming that the process server acted as Father's agent, the process server's affidavit did not attempt to address whether

10

Mother's residence was known or unknown to him, except to say that service attempts at an unspecified location or locations were "unsuccessful" and that a telephone number and an address provided to him by Mother's father were not "accurate." And it wholly failed to address whether Mother was a transient person, or whether she was a nonresident. Not only did the motion fail to meet the requisites of rule 109, it specifically sought substituted service under "Rule 106(b)."

As to the second question, any order granting substituted service under rule 109a must recite that the substituted method of service "would be as likely as publication to give defendant actual notice." Tex. R. Civ. P. 109a. The order here contained no such recitation. To the contrary, it stated, "The manner of service ordered will be reasonably effective in giving the Respondent notice of this suit," which echoes the language used in rule 106(b)(2). Tex. R. Civ. P. 106(b)(2) (providing that the court may authorize service in any other manner that the affidavit or other evidence "shows will be reasonably effective to give the defendant notice of the suit"). Finally, the order implicitly purports to grant relief under rule 106(b), rather than rule 109a, by its reference to Father's motion which explicitly requested substituted service under "Rule 106(b)."[7]

---

[7]We note yet another irregularity in the record here. The docket sheet includes an odd notation dated April 29, 2016—the same day the default judgment was signed and two months after the order of substituted service was filed with the clerk—that states, in part, "R served by publication—No Answer." But there is no evidence in this record that Mother was actually served by publication, and neither party makes such a contention on appeal. The judgment

11

Because the order of substituted service was not authorized by rule 109 and it did not comply with rule 109a, we hold that the two-year period for filing a motion for new trial under rule 329 was never triggered. As such, Mother's motion for new trial—which was not filed within the 30-day deadline—was untimely, and the trial court did not have jurisdiction to consider it. Accordingly, the rules leave us no choice but to overrule Mother's sole issue.

## Conclusion

Having held that Mother's motion for new trial was untimely, we dismiss this appeal for lack of jurisdiction.

/s/ Bonnie Sudderth

BONNIE SUDDERTH
CHIEF JUSTICE

EN BANC

BIRDWELL, J., filed a dissenting opinion in which MEIER and GABRIEL, JJ., join.

DELIVERED: May 24, 2018

---

is silent on the method of service, instead reciting that Mother was "duly and properly cited" and that "[a]ll persons entitled to citation were properly cited." Thus, this docket sheet entry appears to be an erroneous one. If in fact the judge's docket sheet entry is correct, however, then the clerk's record is not only incomplete but the trial court also committed error by failing to appoint an attorney ad litem to defend Mother in the suit, as is required by rule 244 when a party has actually been served by publication. *See* Tex. R. Civ. P. 109, 244.